May it please the court. Counsel. My name is Dave Rowland. I represent the appellants, Pastor Ray Redlich, and Christopher Animas. Your honors, the district court ruled on cross motions for summary judgment, granting summary judgment in favor of the City of St. Louis. The primary question for this court is whether the district court was correct in granting summary judgment in favor of the city, and if not, how this court should then dispose of the case. Of course, on summary judgment, the facts are not supposed to be in dispute, and they are supposed to be interpreted by the court in the light most favorable. Let me stop you, how we should decide it. There's no question under any of your theories you have to show substantial burden, right? Yes, your honor. There must be. We're not going to decide that as a matter of law, so what's the question about what we do if we agree with you on summary judgment? It's remand. What else is in the picture? Well, if the court believes that the appellants are entitled to judgment as a matter of law, my No, we can't do that. Substantial burden is an element of every one of your theories. My understanding, your honor, is that the question of substantial burden is a question of law that can be resolved by this court. It requires a factual record. Well, your honor, there is a factual record It's not sufficient in my view. My colleagues may disagree. All right, proceed. You want judgment as a matter of law from this court? Yes, your honor. We do believe that And you're up here fighting judgment as a matter of law for the other side. Do you understand the irony of that position? Respectfully, your honor, I don't think it's ironic. The parties submitted Whatever you want to call it. Well, your honor, the parties I'll just call it unlikely. I understand that that may be your perspective, your honor. The parties both submitted what they considered to be undisputed material facts that each side believed was sufficient to support a finding as a matter of law. If there are indeed disputes as to the facts that are before the court, then of course I don't understand the relationship between what this ordinance requires and the expression you're claiming is protected. Okay, your honor. You just served peanut butter and jelly. Well, that would be one way of potentially complying So the ordinance does not interfere directly and barely indirectly. Respectfully, your honor, that's not correct. So there are three elements. That's what I'm asking you to explain. That's the problem I'm having with your position. Yes, your honor. There are three elements to the appellant's religious practice, each of which has been spelled out in the record. First, they believe they have a religious obligation to seek out hungry people wherever they might be. They believe that they cannot expect people in need to come to them. Okay, this ordinance has nothing to do with that. What's the second? Well, your honor, if I may, the ordinance does, in fact, prohibit them from going from one place to another if they are operating under a permit. With the second amendment it does? My understanding is yes. Oh, I guess we need a trial on that then, don't we? We may well need a trial on that record. That is very possible, your honor. What are the other two? So the second element is that they must attempt to meet the hungry person's needs immediately, especially if they have the means at hand to do so. And the third element is that they need to provide a nutritionally balanced meal that is similar to what ordinary people would eat. That's part of respecting the dignity of the person that they're serving. So, your honor, one of the problems that we've had is that the city has ignored the part of its ordinance that deals with mobile food establishments. The temporary food establishment permits that they have suggested would be required only allow for the distribution of food in a specific set location. You cannot go from one place to another under a temporary food permit. If you go from one place to another, you have to have a mobile food establishment permit. And this is a legitimate facial attack? We're not challenging it on its face, your honor. We're challenging as applied. How is it applied to your client? Well, the city says that our client must have a permit if they're going to distribute food to the homeless. Did they ever get a permit? They did not. Did they ever attempt to move after they had a permit? Obviously not. It's nothing but a facial challenge. Respectfully, your honor, a facial challenge would require to demonstrate that every application of the ordinance is invalid, and my clients don't argue that every application is invalid. The ordinance was intended and designed to address. Well, then you either have no standing or it's not right on this claim. Well, your honor, the parties don't dispute that the appellants are bound by the ordinance and that if they do not comply with the ordinance, they're in violation. They've already been cited once for violating the ordinance. The city has given every indication that they would cite them again. What if your clients just had peanut butter sandwiches and granola bars? If they just had peanut butter sandwiches and granola bars, they might be able to provide those in one fixed location, but they could not do so immediately, and they could not do so by moving from one place to another. If they went from one place to another, then they would be acting as a mobile food establishment. So the mobile food establishment includes both perishable and nonperishable? Yes. So you, if someone gave out a granola bar to someone on Street A, walked down to Street B and gave out a granola bar to someone, you're saying that's in violation of the ordinance? According to the letter of the ordinance, yes. The letter of the ordinance specifically says that if you are a food establishment and the city has taken the position that any person who is providing food to the homeless, whether or not it strikes me there's a tremendous exhaustion problem with this. I assume the city code has a way to test this question. I'm not sure I understand, Your Honor. Well, you're asking us to hypothesize how an ordinance would be unreasonably and implausibly enforced. Well, Your Honor, we're And then enjoin the city from enforcing the ordinance at all. That's not the way the federal courts operate. Your Honor, respectfully, we are not asking the court to enjoin the city from enforcing the ordinance at all. This is not a facial challenge. It is an as-applied challenge that is directed specifically But it wasn't applied, this part of it. It was applied on Halloween, 2018. Yes, but it wasn't, you had to sue, generating a standing argument that is still in the case, potentially, because the city didn't prosecute. There was a citation, and they went back and had second thoughts about it, and properly so, in my view. Your Honor, respectfully, the city And enjoin the federal court when there's no active dispute. Your Honor, over three years of litigation, the city has agreed that there's an active dispute. They contend that what my clients are doing is illegal and that they are subject to enforcement. And, Your Honor, this is not speculative either. Give me the record site for that assertion. Well, perhaps on rebuttal I can give you a specific site, but the city has contended at every point in this litigation that they What is your answer? What pleading? Your Honor, I will look, and I'll try and provide a specific site on rebuttal. Counsel, I have a quick question for you about the expressive conduct argument in the briefing. You point to the Food Not Bombs case. Opposing counsel suggests that the reason that that food distribution was particularly found to be expressive conduct was that it was paired with literature and banners, if I'm recalling correctly, the facts of the case. We don't have that in the record before us. There isn't literature or banners. It looks like there's occasional distribution of tracts, but not as a regular course. Why isn't that an important distinction? Why do you think that that case is still helpful to your position? It's helpful because the way the Eleventh Circuit resolved that case did not depend on the banners themselves, but rather the expressive message that was carried by sharing food. That's why the court talked about how for millennia food has carried an expressive message. It indicates hierarchical status within a society. It indicates questions regarding culture and gender. And so food has always been understood to be expressive, particularly when it comes to with whom one shares food. And that was a significant aspect of the Eleventh Circuit's ruling in that case. Have other circuits construed that case? Not to the best of my knowledge, Your Honor. It is a relatively recent case, and this is a cutting-edge issue that has not been heavily litigated yet. What about the idea you've also expressed that you're really not wanting to necessarily do what they did in the Eleventh Circuit case, the food not bombs. You're wanting to actually go to people. So you don't have that collective food sharing. It's food sharing, but it's more on an individual basis. And so if you're looking at it from the viewpoint of the observer, do you not see a difference between sort of that collective food sharing and the group and sort of, when I say random, I don't mean that disrespectfully, but sort of opportune spots where you find someone and give them a sandwich. If someone walked by, would they actually see the same message, one person giving a sandwich or a granola bar to someone versus this food not bomb situation? Is there a difference there that's meaningful from the observer's viewpoint? There's a difference. I don't believe it's meaningful, Your Honor. The record shows in this case that people have seen what Pastor Ray and Chris do in ministering to these people. They have understood the message and that they have followed through by sharing food on their own. The record shows that, both from Mr. Redlich's deposition and from the affidavits. Can I stop? Oh, I'm sorry. Go ahead. Yes, Your Honor. I was just going to build off what Judge Kelly suggested in your answer. Is every time somebody gives something to a person on the street, for instance, when I stop at the light and give a bottle of water or a couple of dollars to the person with the sign, in your reading of, or let's say I give them food. Let's say I have a granola bar in my car and give food. That is speech? That is expressive conduct? It depends in part on the intent of the person who's doing the giving. If I may, to analogize it to other forms. I think the question was perception. So as far as perception, it may or may not make a difference. If I may point out, the U.S. Supreme Court has recognized express protected, constitutionally protected expressive conduct with nude dancing and other expressive acts, burning a flag. Not every time someone burns a flag are they intending to send a particular message, and not every time someone burns a flag intending to send a message do bystanders understand what that message is. It's still expressive communication protected under the First Amendment. What's a good limiting principle then under your understanding of that rule? When is me giving a person on the street a granola bar or when is that expressive conduct tantamount to speech and when isn't it? How do we make that decision? Well, if an individual is not intending to engage in expressive conduct when they provide food to somebody, then they are not engaging in expression that's protected. They don't intend to express anything, therefore there's no First Amendment protection. But if someone intends to send a message by sharing food, there very definitely is an expressive aspect to that. But doesn't that just leap over the second step that we have to see what the perception is? I think the question is sort of, okay, let's assume giving this granola bar as some expression, and it's my expression, it's my intent to make some statement, but when is it then perceived by someone else as even a particular message or a general message other than, you know, I've got a bunch of granola bars and I'm just going to share one. Your Honor, I guarantee you the homeless people receiving the food get the message. I guarantee you they understand. Get the intent? Yes. But is that because there's speech added to it? I believe that the message is conveyed regardless of whether there's speech added to it, but in this situation there is frequently speech added to it. So, of course, Minneapolis is full of skyways because of our winter, and the skyways are populated by people homeless and otherwise soliciting money, food, or anything else. So every time a skyway person drops a nickel in the drum, to use the old Salvation Army expression, that's First Amendment protection. They have just gotten the First Amendment protection you're seeking. If the person giving the money intends to send a message by doing that, yes, Your Honor. Well, how does the court – who decides that? Well, if there's – Well, if the intent is simply charitable, spontaneous charitableness. That's where our hybrid rights claim comes in, Your Honor. Food Not Bombs was a secular organization, and there are other secular organizations that focus on providing food to the homeless. They do, in fact, have expressive intentions. That's what the Food Not Bombs case was about. This case is different, and it warrants hybrid rights scrutiny because this is an act of worship that is also expressive in nature. And, again, whether or not people – Can you help us focus on your hybrid rights argument just a little bit? And I'm glad you pivoted to it. Tell me what you think the impact of – I'm sorry. I don't have the – oh, BWC versus Williams? BWC versus Williams disposed of the hybrid rights claim almost in a perfunctory manner as opposed to the Telescope Media case where they actually discussed significantly why hybrid rights applies when you have a specific act that ties together both religious components and expressive components, and that's exactly what we have here. But aren't we bound by BWC? I do see I'm running out of time. Oh, I'm sorry. I'll let you save some for rebuttal. We can talk about it then. I am happy to answer questions if you want to ask them. I just want to make sure I reserve some time. That's fine. Okay, thank you. Ms. Duncan? Good morning, and may it please the Court. The city's ordinance and its subsequent amendments adopted the Food and Drug Administration's National Food Code with limited exception to protect all its citizens, including the homeless, from foodborne illness. In this case, defendants or plaintiffs demand the right to express their religious beliefs by distributing potentially hazardous foods to the homeless without the permit required of all other distributors of such food. Why don't you bring the mic a little closer? You're talking down and softly. Sorry. Counsel, can I ask the same factual point that Judge Kelly was trying to flesh out last time? Sure. Is it correct under the latest iteration of the ordinance that a permit is required and there are limitations upon mobile delivery of prepackaged food, not the potentially perishable foods, but the granola bars? Is that correct? Are we reading that right? No. So there is no restriction on non-potentially hazardous foods. I can't understand you. That mic is movable. Can you hear me now? No. Maybe it's not on. I don't know. You're just my age, I'm sure, but I'm not hearing you. I'm sorry. Maybe I'll move into the mic a little bit more. I apologize. Judge Kelly, I'm sorry, could you repeat your question? I was just hoping you could clarify how the ordinance works with respect to the example Judge Kelly gave about going street to street with non-perishable food. Right. So non-perishable food or non-potentially hazardous food can be distributed at any time. There's no permit that is required for that, and that's a key distinction as to why plaintiffs cannot demonstrate substantial burden because it does not apply to all foods. It applies to potentially hazardous foods. This Court should affirm the District Court's grant of summary and judgment to city because the Plaintiff's Free Exercise Claim splits. I haven't studied the latest. Is that clear from the face of the ordinance? It is. It is. Because the language of the ordinance in its amendments does not change that basic fact. The Plaintiff's Free Exercise Claim fails because they fail to show that the ordinance is a substantial burden to their religious exercise and the ordinance meets rational basis review. Two, Plaintiff's Freedom of Expression Claim fails because the distribution of potentially hazardous foods is not inherently expressive activity, and in any event, the ordinance meets intermediate scrutiny. And three, because both of the Plaintiff's Claims fails, the hybrid rights theory is not triggered, should not be applied to this case. And in any event, the ordinance meets strict scrutiny review. In order to open the door to a free exercise claim, either in its own right or under a hybrid rights theory, the Plaintiff must demonstrate a substantial burden to their religious exercise. And on this point, the law is clear as to what does not constitute a substantial burden. Fees or expenses are not a substantial burden. So says Bronfeld, the U.S. Supreme Court case, which held that a law that operates so as to make the practice of religious beliefs more expensive did not sufficiently burden plaintiffs under the free exercise clause. On that point, and I think this would also get into the idea of the expression claim, what in your view are we actually looking at? I think your opposing counsel represents this as distributing food to the homeless as a part of their religious beliefs and creed and important to them, and that's their expressive view. But does it matter that the only thing the ordinance restricts is perishable food? So, I mean, how do we look at that? I mean, are we looking at distributing food as part of my religious obligations or distributing potentially perishable or perishable potentially dangerous foods to people? Does that distinction make sense to you in the question? I'm not quite sure. I'm trying to figure out what are we looking at. Just distributing food as the religious expression or are we looking at distributing potentially dangerous food because it's perishable as part of my religious expression? So I think in order for plaintiffs to demonstrate that they have a substantial burden, they must show. Isn't the first answer it's a moving target the way the case has been presented? What do you mean by that? It's wrapped in religion, but then as soon as the lack of relationship to religion is brought out, then all of a sudden it's expressing a desire to help the needy, which is not religious at all necessarily. So which should we deal with? Or are they both subject, in your view, to the same answer? Well, I think in order, like I was saying, Judge Kelly, when it comes to demonstrating substantial burden, plaintiffs must show that it is inherent in their religion and a substantial burden not to distribute potentially hazardous foods. And I think that's where the rub comes is just generally this ordinance does not prohibit them from distributing food. It's only a particular kind of food. So unless they can demonstrate in some way that potentially hazardous foods is what is required by their religion, then there is no substantial burden. But what if it's not religion tied? What if it's a universalist desire to help the needy and improve mankind? Then that takes it out of the free exercise realm. And then all you would be left with would be the freedom of expression claim. But isn't that what the Eleventh Circuit resists, that notion? The Eleventh Circuit held that it was inherently expressive to have a meal and to distribute food. And they did so within the context of facts that included banners, distributing literature, and eating. But it still wasn't tied to religion, their analysis, as I read it. They expanded the universe of protection or got it right, depending on what the Supreme Court would say about this. I don't think that it expanded the right. I think that it drilled down on what it is that is required of inherent activity or inherently expressive conduct. And it's one that we disagree with and one that this Court has not implemented specifically. But, you know, the First Amendment protects free speech and religion. So expression is part of speech, and expression can be a manifestation of religion. That's correct. So I think they are claiming both protections, and you're only answering one. But they're only bringing a claim under the free expression clause, not under the free speech clause. And under that free expression claim, if it is not inherently expressive activity, then it does not fall within that clause. And if speech is needed to supplement the expression, then it takes it out of the free expression realm. Well, but, you know, protest parades are not religion. But they are protected as expressive conduct. That's what they're trying to get here. And I don't hear your answer to that. Well, You want to tie it to religion and then say this is, you know, their religion can be satisfied with peanut butter and jelly and granola bars. Well, I'm not That doesn't answer what they want us to do with the broader expression claim. Well, I'm not tying their claims to religion. They are tying their claims to religion. They're the ones that brought the free exercise claim. This morning. Well, that has been what they have briefed and what they have claimed up to this point. As discussed, you're right, Judge Loken, and that there are certain inherently expressive activities that have been deemed under the freedom of expression clause to be protected. One of them is burning the American flag, burning draft cards, marching in a parade, etc. But here, and in that analysis, the courts are really focused on what is an observer from the outside perceiving. It's not just what the intent of the message is. But it's what the observer would understand from that conduct. And in this case, the plaintiffs, plaintiff omnibus, admitted as much that if someone were to walk by and see them ministering to the homeless by way of giving them food, that a passerby would not understand that that was a religious message being communicated. And in that way, there's cases like Rumsfeld v. Fair, where Fair wanted to exclude military recruiters because of the government's stance on homosexuality in the military. In that case, the Supreme Court held that Fair members' exclusion of military recruiters was not inherently expressive conduct warranting First Amendment protection because the expressive component of a law school's actions is not created by the conduct itself but by the speech that accompanies it. And the court went on to note that an observer of a recruiter outside of a law school would not understand that the law school was banning the recruiter and that thereby was some kind of statement or expression, but instead wouldn't know why he was out there. And similarly, as I stated, we have a situation here as well where we don't understand the message. An observer would not understand the message being communicated by distributing food, whether it was that of religion or something else. So you push back on opposing counsel's suggestion that intent of the giver really trumps almost anything else. It has to be external perception, and here perception doesn't, in your mind, support the expressive speech. What about the perception of the recipient of the food? So you have the giver intending speech. You have the recipient getting the message. Why isn't that enough? So if there is a recipient of it, the question is still whether they would understand that that is a religious communication in this respect. And here, if someone is given a sandwich, they no doubt would be grateful, but without the speech to accompany why that sandwich is being given, that it's being given out of some biblical or religious mandate, they would not understand that that is the case. What if the giver is dressed in religious garb or there's something else that is about the giver, him or herself, without the speech, but other sort of expressive regalia on their clothing? I think that we're getting closer, but I still don't think that we're quite there yet with it. I think that even in that situation, someone may understand that that person is religious, but may not necessarily infer that that giving of food was an inherently expressive religious statement, if that makes sense. Can we talk for a moment about the hybrid rights idea? Sure. So I know that it's your position that the 8th Circuit has never issued a decision that can be interpreted as allowing the two rights involved in the hybridization to bolster one another over the threshold if each can't stand on its own. Tell me your thoughts about how or whether BWC v. Williams gives us clarity on this. So in BWC, the court dismissed the hybrid rights claim because each of the plaintiff's First Amendment claims failed on its own. And while the 8th Circuit has not discussed by what standard the hybrid rights theory is triggered, whether under a colorable claim or under an independently viable claim standard, I do believe that BWC clarifies that to say that if both of the claims fail, as we maintain it does in this case, that the hybrid rights theory is not triggered. That is also a position that the D.C. Circuit has taken, and essentially the reasoning is 0 plus 0 equals 0. So if there is no free expression claim, if there is no free exercise claim, then there cannot be a hybrid rights claim. Thank you. Even if this Court determines that plaintiff's free expression claims survive, plaintiffs must still demonstrate a substantial burden to their religious exercise to trigger the hybrid rights theory. This is evident in Parker v. Hurley.  What are they arguing and what are you arguing as to the level of scrutiny? So we are arguing that the hybrid rights theory does not apply, but acknowledge that if the Court applies it, if the Court allows the free exercise claim to survive and thereby breathe new life into the free exercise claim by warranting a hybrid rights theory, that the hybrid rights doctrine does warrant strict scrutiny. And our position is that even if that is applied, that the ordinance survives strict scrutiny. And it does so because the interest, the government interest at hand is compelling. To that we point to national trends where food illness outbreaks amongst the homeless have occurred in jurisdictions that do not have a similar ordinance to city's ordinance. We look also at local implications to this. The city has demonstrated in the record a real need for this ordinance, as there have been city homeless who have fallen ill to foodborne illness because of illegally distributed food. And the law speaks specifically that not only public health, but food-related health interests are compelling. The record, at least from what I've seen, the one potentially hazardous food that's identified is a bologna sandwich. Are there other examples of food items that the plaintiffs want to distribute but are prohibited from doing so based on the ordinance? The plaintiffs have limited their want of distributing sandwiches, to the best of my knowledge. It is, they could distribute other things. Obviously, we talked about non-potentially hazardous foods. If the issue for them is being nutrition, there are a variety of non-potentially hazardous foods that would be considered nutritious. For example, granola bars, as you mentioned, protein bars. There's nuts, dried fruit, whole fruit also does not fall under the ordinance. So the only identified food that they feel they've been prohibited from distributing is bologna sandwiches? From the record, yes. And it's your position that none of their claims live without the substantial burden showing. And so if taking bologna sandwiches off the menu isn't a substantial burden, that answers all the questions. So the substantial burden pertains to the free exercise claim and also to the hybrid rights claim. The substantial burden does not apply to the free expression claim. Okay. Moreover, the ordinance is narrowly tailored. Narrowly tailored does not require a perfect fit. It requires a close fit between the means and the ends. This ordinance requires that individuals wanting to distribute food identify where they will be, so that a health inspector can go to that location and ensure that the food is being prepared and handled in a way that is in accordance with the National Food Code. It only pertains to potentially hazardous foods distributed to people in the public and therefore is narrowly tailored to the compelling interest of preventing foodborne illness. How does the ordinance define the difference between the public and a private barbecue in the park? Do they define, and I just didn't look for that, but do they have invitee or how do they distinguish them? They don't have that language in it, Judge. I think it's generally understood that if one is offering food to anyone and everyone, then this ordinance would apply. If it is a backyard barbecue amongst friends and family, then it would not. Even if it's in a public park? Even if it's in a public park, that's correct. But if it's in a public park and it's for my friends and family, and I invite a few of the homeless residents who spend a lot of time in the park to be my guests, that's okay. It wouldn't apply. If the food being distributed is for the public outside of the realm of people you know, then the ordinance would apply. But if I make them people that I know in that moment, it wouldn't apply? Correct. In conclusion, and for all these reasons, the City requests that the District Court ruling be affirmed as plaintiffs have failed to establish any of their claims, and therefore the hybrid rights theory is foreclosed. Thank you. Thank you. Thank you. Thank you. Thank you, Your Honor. Your mask. My apologies. To respond to your questions about how the mobile food permit applies and whether there are consequences if they move from one place to another, I refer you to a joint appendix at around 839. That is where it lays out the conditions and the obligations of people who accept permits from the City under the Food Establishment Permitting Program. So as we've pointed out at Joint Appendix 804, the definition of mobile food establishment expressly includes packaged mobile food establishments, which are vehicles which serve only prepackaged rates. Okay, but you just limited it to people who accept permits, which is not your client. So if your client chooses to pass out granola bars without a permit, this doesn't apply. So, Your Honor, the reason that the City considers my clients subject to these regulations is because the City considers them to be a food establishment when they engage in the act of distributing food to people on the streets of the city. I thought the theory was they did once. The citation demonstrates that you can't do bologna sandwiches, and that's unconstitutional. Your Honor, the record shows that the City has been enforcing its laws in this way for years. They pointed out examples historically. In connection with hazardous foods. So Judge Kelly's granola bar example is not this case. It's not even in this case. So, Your Honor, the problem is, as a food establishment per the City's definition, once one starts distributing at multiple locations prepackaged foods or whole, uncut foods and vegetables Only if you seek and receive a permit. Then you've subjected you, the client, the permittee, and accepted the conditions of the permit. Failure to obtain a permit is subject to a penalty of $500. If you distribute potentially hazardous food. Distributing food without a permit is a $500 fine. Where's the... That's JLA 852, Your Honor. You're having a hard time reconciling your assertion that you would need a permit for non-perishable food as a mobile food establishment. With opposing counsel's response that you actually, none of this would apply if all you are doing is granola bars street to street. Or other non-perishable food. With all due respect to opposing counsel, that's part of the problem with this case. Is the City has refused to take its own ordinances at face value. They've moved the goalposts multiple times. This is the problem with pre-enforcement constitutional litigation. Which is the reason why it's so often not entertained by the federal courts. You are asking us to speculate what the City would do in a variety of situations. Based on what they threatened to do once and then didn't do. And the record shows that they also acted against other people providing food. And the complaint... This is not a class action. This is an as-applied attack. But it's largely facial as articulated. And, you know, this is why pre-enforcement litigation is disfavored. Your Honor, I see the amount of time. May I respond to that last statement? You can give me a case in the Supreme Court where a similar level of pre-enforcement speculation was entertained. Well, Your Honor, that's actually a different issue that I was going to address. The issue I intended to address is that courts, including the U.S. Supreme Court, do allow plaintiffs to bring causes on behalf of others similarly situated without a class action. As to your question about pre-enforcement actions, I don't have one at the tip of my tongue. And I'd be happy to provide a list of citations. I can find them quickly. That's all right. Okay. But there are examples of pre-enforcement cases that have been successful. I know that. But they're very rare. Thank you. Thank you, counsel. Counsel? Counsel, the case has been thoroughly briefed and arguments have been very helpful. And we'll take it under advisement.